LUCERO, Circuit Judge,
concurring in part and dissenting in part.
I agree with the reasoning of the majority opinion except to the extent that it is controlled by an unduly narrow definition of the term “successor in interest.” I therefore respectfully dissent from Part V, and concur specially with respect to Part VI.
More than twenty-five years have passed since the IRS entered into a Closing Agreement with Conoco[1] and other entities that controlled the Trans Alaska Pipeline System (“TAPS”). The Closing Agreement allowed these taxpayers to take periodic deductions based on their shared obligation to dismantle the pipeline at the end of its operational life. Anticipating the possibility that interests in TAPS would be transferred, the Closing Agreement permitted “successors in interest” to take deductions similar to those permitted the original owners. An entity that transferred its interest was required to repay the government for, or “recapture,” deductions beyond the dismantlement costs already incurred. The term “successor in interest,” as used in the Closing Agreement, simply means a purchaser or assignee of an interest in TAPS that “expressly assume[s]” the eventual dismantlement obligations from the seller or assignor. By adopting a narrow definition of “successor in interest,” my colleagues retroactively amend the Closing Agreement in a manner that deprives Co-noco of the legitimate deductions to which it is entitled. This effects a windfall for the IRS.
As the majority acknowledges, the Closing Agreement does not define “successor in interest.” The parties advocate two divergent definitions of the term. “Successor in interest,” according to the government, is limited-with one exception-to statutory succession. The reading proposed by the government requires us to interpret paragraph five of the Closing Agreement as an implied and exclusive *1213 exception to the putative requirement that a “successor in interest” must be a statutory successor. But paragraph five is by its plain terms nothing more than an exception to the recapture provision in paragraph four. Moreover, as Conoco points out, the only textual limitation on the term “successor in interest,” found in paragraph eight, requires “successors] in interest” to “expressly assume[]” dismantlement obligations from the previous owner. That limitation becomes excess verbiage if the term applies only to statutory successors, which necessarily assume the obligations that the Closing Agreement requires them to “expressly assume[ ].”[2] See R.J. Enstrom Corp. v. Interceptor Corp., 555 F.2d 277, 281-82 (10th Cir.1977). Nothing in the text of the agreement supports the position taken by the government.[3]
Conoco argues that “successor in interest” must include any entity that assumed an interest in TAPS originally owned by one of the signatories to the Closing Agreement. That position is in harmony with the text of the Closing Agreement. It accords with the only textual limitation on the term “successor in interest” that appears in the Agreement. Even the exception in paragraph five, upon which the government relies, better corresponds to the interpretation proffered by Conoco. The language of paragraph five does not create a broad exception to the term “successor in interest;” it establishes a narrow exception to the recapture provision for a subset of successors. As my colleagues note, this exception to the recapture provision makes sense for tax purposes unrelated to the definition of “successor in interest.” (See Majority Op. 17-18.) There is no reason, nor need, to manipulate the paragraph such that it creates an exception to the term “successor in interest.”
I would hold that Arco Transportation is a “successor in interest” with respect to the 4.3795% interest in TAPS it acquired between 1977 and 2001, and that Conoco is entitled to take the going-forward deductions as defined by the Closing Agreement. To the extent that the majority denies those deductions, Conoco is deprived of its bargain and the IRS receives a windfall to which it is not entitled.

. For convenience, party names are used in the same manner as in the Majority Opinion.

. My colleagues suggest that the limitation was included in the Closing Agreement "to address! ] the exception involving the filing of a consolidated tax return by related entities.” (Majority Op. at 1208.) The textual basis for this conclusion eludes me. There is no such language in the paragraph containing that requirement, and the only relevant language in the agreement that discusses related entities and consolidated agreements is in paragraph five, which, as explained above, does not bear on the meaning of "successor in interest.”

. The phrases "their successors in interest” and a "successor in interest to such Owner,” do not undermine the interpretation offered by Conoco. Rather, their presence supports the position articulated by Conoco because the phrases comport with IRS regulations propounding, in a similar context, precisely such an interpretation of "successor in interest.” See 26 C.F.R. § 301.6110-2 (1977) ("A 'successor in interest' to any person to whom a written determination pertains or background file document relates is any person who acquires the rights and assumes the liabilities of such person with respect to the transaction which was the subject matter of the written determination, provided that the successor in interest notifies the Commissioner with respect to the succession in interest.” (emphases added)). Although I agree with my colleagues that the regulatory definition of "successor in interest” is persuasive rather than binding in this context, I note that the regulation with an alternative definition cited by the majority was promulgated several years after the execution of the Closing Agreement.